**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

KALIN HARRIS,

                    PLAINTIFF,

          V.

THE CIGNA GROUP, D/B/A CIGNA
HEALTHCARE,

                    DEFENDANT.

---

**COMPLAINT**

**JURY TRIAL DEMANDED**

---

Plaintiff Kalin Harris, represented by Seppinni Law, alleges based on information and belief at all relevant times:

**PRELIMINARY STATEMENT**

1.       Kalin Harris worked for health insurance conglomerate, Cigna, for two years, from October 17, 2022, to October 9, 2024.

2.       Harris's managers repeatedly pressured him to falsify reports and disclose confidential customer and patient information, in violation of the Health Insurance Portability and Accountability Act ("HIPAA").

3.       Throughout his employment at Cigna, Harris, who is Black and openly gay, experienced repeated harassment and discrimination based on his race, sexual orientation, weight, and disability status.

4.       Harris's managers mocked and disparaged him, including by making repeated stereotype-based, derisive comments about his appearance, voice, weight, diet, and disability, and they treated him less well than his white colleagues, including by denying him trainings and resources those colleagues received.

1

5.      Harris refused to comply with his managers' demands that he break the law and instead blew the whistle on them—through repeated formal complaints with Cigna human resources and leadership. Rather than investigate or address Harris's complaints, Cigna retaliated against him, including by threatening him and denying him access to resources and trainings. On top of this, after he blew the whistle on his managers, their bullying and harassment worsened.

6.      Because of this—his managers' repeated requests that he break the law, their retaliation against him for refusing to do so and for blowing the whistle, and the increasing discriminatory conduct—Harris became so stressed and anxious that, at his doctor's urging, he took mental health leave, under the Family and Medical Leave Act ("FMLA").

7.      When Harris returned from leave, Cigna ramped up its retaliation, locking him out of all Cigna systems, programs, and platforms; removing him from team meetings; calling security to physically block him from Cigna offices; continuing to threaten him; and pressuring him to resign.

8.      A few weeks later, when Cigna learned Harris had retained a lawyer and was put on notice of his claims, Cigna suspended him the next day without pay and then fired him.

9.      In all, Cigna retaliated against Harris for making protected complaints, blowing the whistle, taking mental health leave, and retaining counsel.[1]

---

[1] Harris affirmatively opted out of Cigna's forced arbitration and 7th Amendment waiver scheme. Regardless, this is a sexual harassment dispute under the Federal Arbitration Act and thus is exempt from forced arbitration. Similarly, his whistleblower claims are exempt.

## THE PARTIES

10.     Plaintiff Kalin Harris is a resident of Connecticut. He worked for Cigna, in its New York City offices, from October 17, 2022, to October 9, 2024. At all relevant times, he was an "employee" within all applicable statutes.

11.     Defendant The Cigna Group, d/b/a Cigna Healthcare, is a national health insurance company. Its relevant New York office is at 140 East 45th Street, New York, New York 10017, and its headquarters are at 900 Cottage Grove Road, Bloomfield, Connecticut 06002. At all relevant times, Cigna Healthcare was Harris's "employer" under all applicable statutes.

## JURISDICTION

12.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions on the deprivation of Plaintiff's rights under federal law.

13.     The Court has supplemental subject matter jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367(a).

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in the Southern District of New York, where Harris worked for Cigna. Cigna also engages in regular and continuous contacts with this District including by, but not limited to, employing individuals, including Harris, to work and do business in this District.

## ADMINISTRATIVE PROCEDURES

15.     Under section 8-502 of the New York City Human Rights Law ("NYCHRL"), Harris will serve a copy of the Complaint on the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel, within 10 days of its filing, thereby satisfying the notice requirements of this action.

16.     Under section 215(2)(b) of the New York Labor Law ("NYLL"), Harris will serve a copy of the Complaint on the New York Attorney General, thereby satisfying the notice requirements of this action.

17.     Plaintiff timely filed a charge of discrimination with the EEOC, received a Notice of the Right to Sue, and filed this lawsuit within 90 days thereof.

18.     All other prerequisites to filing this suit have been met.

## FACTUAL ALLEGATIONS

**I.     Cigna demands that Harris violate patient privacy laws, and retaliates against him when he blows the whistle.**

19.     Harris worked for Cigna from October 17, 2022, to October 9, 2024, in client service, from Cigna's New York City and Bloomfield, Connecticut offices.

20.     In early March 2024, Harris filed a request form for data. On or about March 14, 2024, Cigna's Data Measurement and Reporting Team returned the form to him and told him the form needed a Non-Disclosure Agreement ("NDA") because it contained sensitive, confidential patient information that external parties would see, in violation of HIPAA.

21.     Rather than allow Harris to fix the request form and bring it into compliance with HIPAA, Harris's managers, Nic Szwarc and Yvonne Oliver, instructed him to fraudulently mark the form as an *internal* request for data, so that it would not get flagged as requiring an NDA for third parties.

22.     But the requested data was not for internal use. Harris's managers told him they wanted to circumvent compliance because third-party NDAs (including by insurance brokers or administrators) would slow down Cigna's business.

23.     Harris knew this was wrong. He knew the form contained sensitive information and required an NDA. He told this to his managers. Still, they insisted he falsify the form.

24.     Unsure what to do, on March 16, 2024, Harris asked his managers for a training on how to handle sensitive patient information. Harris knew his white peers had already received this training and he hoped the training might help him navigate his managers' request or find some lawful way to comply with it. Without any explanation, Szwarc denied his request for a training.

25.     At the same time, on March 18, 2024, Harris filed a formal complaint through EthicsPoint. In that complaint, he reported that his managers instructed him to act unlawfully by

demanding that he falsify reports. He also reported that he had requested and been denied a training that Cigna offered to his white peers.

26.     Shortly after he made this complaint, Szwarc, his manager, called him on the phone and told him *never again* to raise compliance concerns with senior leadership, suggesting Harris would face consequences if he did.

27.     Then, on March 22, 2024, Nicholas Concepcion, a member of Cigna's human resources team, followed up on Harris's EthicsPoint complaint.

28.     Concepcion told Harris he had not read the complaint but would be escalating it to one of his superiors. But he never did.

29.     Cigna never investigated or otherwise addressed Harris's complaint and ultimately marked it closed.

30.     Months later, in a July 2024 team meeting, one of Harris's colleagues raised a concern about managers instructing employees to lie on reports or paperwork. Harris spoke up, saying he shared his colleague's concern, as he also had been instructed to lie on a report. He said he still had not received clear guidance or training on how to handle matters relating to sensitive patient information.

31.     In response, Harris's managers said they would follow up with guidance after the meeting. They never did.

32.     A short time later, another of Harris's filed request forms was rejected by the Data Measurement and Reporting Team, who flagged the form as requiring an NDA. The Reporting Team instructed Harris to mark the document as external and requiring an NDA, not as internal, and reminded him that marking the document as internal to avoid the need for an NDA would violate HIPAA.

33.    Harris then forwarded to the Reporting Team the instructions he'd been given by his managers to mark the document as internal. He CC'd his managers.

34.    Rather than admit they were wrong, Harris's managers doubled down, insisting once again that Harris mark the document as internal, despite conflicting instruction from the Reporting Team.

35.    Harris was trapped. He either could follow direct orders from his managers and break the law or defy them, in compliance with the law, and risk his job and reputation.

36.    He began to experience increasingly severe stress, anxiety, and fear.

37.    Harris repeatedly asked the Reporting Team and other high-ranking officials for guidance. They all told him repeatedly that he could not mark external documents as internal to skirt HIPAA requirements. At the same time, his managers continued to tell him to do exactly that, threatening disciplinary action if he did not.

38.    On August 1, 2024, in an apparent about-face, Szwarc said he would correct his guidance at the next team meeting. Harris understood this to mean Szwarc would stop directing him and others to falsify documents and instead would follow the Reporting Team's instructions, in compliance with HIPAA.

39.    But that's not what happened. Instead, at the next meeting, Szwarc told his employees to hide any evidence the data requests were being sent externally, so they would not be flagged as violating HIPAA and requiring an NDA. Szwarc told his employees to pretend the requests came from an internal sales department, even when those requests were to be released externally. He then told them that if anyone asked questions, Mr. Harris and his coworkers should lie and say that the sales department would scrub any confidential information before release, even though all involved knew this was untrue.

40.     Harris reasonably believed the instructions Szwarc gave him were illegal and voiced these concerns repeatedly.

**II.    Cigna retaliates against Harris, then fires him shortly after he returns from protected leave and retains a lawyer.**

41.     Feeling increasingly overwhelmed, stressed, and afraid—forced to choose between losing his job and breaking the law—and on the recommendation of his doctor, Harris requested FMLA leave, for his mental health.

42.     In mid-August, while Harris was on leave, Cigna's Compliance Managers met with Harris's managers and told them their team could no longer request any data marked as external.

43.     Harris's managers, Szwarc and Oliver, continued to insist they were right and that Harris and the Compliance Department were wrong.

44.     Then, in a teamwide email, the managers pointed the finger at Harris, blaming *him* for what they told team members would now be a more frustrating, time-consuming approvals process. They turned his team against him because he reported their illegal scheme.

45.     Harris returned to work on September 13, 2024, and upon his arrival, learned Cigna had locked him out of all work systems, programs, and platforms. He could not do any of his work.

46.     On September 19, 2024, Szwarc refused to let Harris into a digital team meeting.

47.     Harris filed another EthicsPoint complaint, and on September 20, 2024, his system access was temporarily restored.

48.     Just a few days later, on September 23, 2024, human resources called Harris. They accused him of "disrespecting" his managers and pressured him to resign. He refused.

49.     That same day, Harris's lawyers sent Cigna and Jana Walker, Cigna's Vice President of Sales Operations, a document preservation demand, putting them on notice of this litigation.

50.     That night, Walker texted Harris on his personal cell phone, demanding to speak with him. Harris agreed to speak with her but said he would record the call.

51.     Walker refused to speak with Harris unless he agreed not to record her.

52.     The next day, September 24, Cigna again locked Harris out of its systems, and human resources requested another call with him.

53.     On September 25, 2024, human resources informed Harris he was suspended, effective immediately.

54.     And on October 9, 2024, Cigna fired Harris, its final move after a months-long pressure campaign in retaliation for Harris blowing the whistle on his managers' unlawful conduct.

55.     Cigna tried to silence Harris, demanding he sign a non-disclosure.

56.     Harris refused.

## III.  Cigna sexually harassed and discriminated against Harris because he is Black, gay, and disabled.

57.     Throughout Harris's employment with Cigna, he experienced repeated instances of harassment and discrimination on the basis of race, sexual orientation, weight, and disability status.

58.     Harris is Black and openly gay. His manager, Szwarc, routinely mocked his sexuality, including by mocking Harris's voice, with an exaggerated stereotypical affect, in conversations that should have only included professional feedback. Szwarc also made repeated disparaging comments about Harris's disability, weight, and diet, which caused Harris considerable distress and worsened his underlying conditions' symptoms.

59.     Szwarc also excluded Harris from trainings and other professional development opportunities that his straight, white colleagues attended.

60.    Harris reported this harassment and disparate treatment to human resources. They never fully investigated his complaints and instead allowed his managers' conduct to continue unchecked.

61.    Cigna also accused Harris of being "aggressive" and confrontational, and of scaring employees based on nothing more than stereotypical and racist prejudices about Black men. This gave Harris's colleagues the greenlight from management to ostracize him further.

## FIRST, SECOND, AND THIRD CAUSES OF ACTION
### Discrimination, Sexual Harassment, and Retaliation in Violation of Title VII

62.    Harris repeats and realleges each allegation in the preceding paragraphs as if fully set forth above.

63.    At all relevant times, Harris was an "employee" within the meaning of Title VII, and Cigna was an "employer."

64.    By the actions described above, Cigna violated Title VII by discriminating against and harassing Harris, including by making frequent and repeated hostile comments regarding his sexual orientation, disability diagnoses, treating him less well than white, straight colleagues, and by retaliating against him, including by terminating him, for making protected complaints, blowing the whistle, taking legally protected mental health leave, and retaining counsel.

65.    As a direct and proximate result of Cigna's unlawful conduct in violation of Title VII, Harris suffered and continues suffering harm for which he is entitled to an award of damages, to the greatest extent permitted under law, along with attorneys' fees and expenses.

66.    Cigna's unlawful discrimination, harassment, and retaliation constitute bad faith, malicious, willful, and wanton violations of Title VII for which Harris is entitled to an award of punitive damages.

## FOURTH CAUSE OF ACTION
### Retaliation in Violation of the Family and Medical Leave Act ("FMLA")

67.    Harris repeats and realleges each allegation in the preceding paragraphs as if fully set forth above.

68.    At all relevant times, Harris was an "eligible employee" within the meaning of the FMLA. Harris worked for Cigna for more than 12 months and at least 1,250 hours over the last 12 months of his employment there.

69.    Cigna is a "covered employer." Cigna employs more than 50 employees within a 75-mile radius during each of 20 or more calendar workweeks in the current or preceding calendar year.

70.    By the actions described above, Cigna violated the FMLA by unlawfully retaliating against, and ultimately terminating, Harris for taking legally protected mental health leave.

71.    As a direct and proximate result of Cigna's unlawful conduct in violation of the FMLA, Harris suffered and continues suffering harm for which he is entitled to an award of damages, to the greatest extent permitted under law, along with attorneys' fees and expenses.

72.    Cigna's unlawful retaliation constitutes bad faith, malicious, willful, and wanton violations of the FMLA for which Harris is entitled to an award of liquidated damages.

**FIFTH CAUSE OF ACTION**
**Retaliation in Violation of New York Whistleblower Law (NYLL § 740)**

73.     Harris repeats and realleges each allegation in the preceding paragraphs as if fully set forth above.

74.     At all relevant times, Harris was an "eligible employee" within the meaning of § 740, and Cigna was a "covered employer."

75.     By the actions described above, Cigna discriminated and retaliated against Harris when it threatened him, locked him out of work systems, blamed him for conduct he did not do, and ultimately terminated him for making protected complaints about his managers' unlawful conduct, including their illegal demand that he knowingly violate HIPAA by filing fraudulent reports.

76.     As a direct and proximate result of Cigna's unlawful actions in violation of § 740, Harris suffered and continues suffering harm for which he is entitled to an award of damages, to the greatest extent permitted under law, along with attorneys' fees and expenses.

77.     Cigna's unlawful retaliation constitutes bad faith, malicious, willful, and wanton violations of § 740 for which Harris is entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION

**Retaliation in Violation of New York's Health Care Employer Whistleblower Law (NYLL § 741)**

78.     Harris repeats and realleges each allegation in the preceding paragraphs as if fully set forth above.

79.     At all relevant times, Harris was an "eligible employee" within the meaning of § 741, and Cigna was a "covered employer."

80.     By the actions described above, Cigna discriminated and retaliated against Harris when it threatened him, locked him out of work systems, blamed him for conduct he did not do, and ultimately terminated him for making protected complaints about his managers' unlawful, including their illegal demand that he knowingly violate HIPAA by filing fraudulent reports.

81.     As a direct and proximate result of Cigna's unlawful actions in violation of § 741, Harris suffered and continues suffering harm for which he is entitled to an award of damages, to the greatest extent permitted under law, along with attorneys' fees and expenses.

82.     Cigna's unlawful retaliation constitutes bad faith, malicious, willful, and wanton violations of § 741 for which Harris is entitled to an award of punitive damages.

## SEVENTH CAUSE OF ACTION
### Retaliation in Violation of NYLL 215

83.     Harris repeats and realleges each allegation in the preceding paragraphs as if fully set forth above.

84.     At all relevant times, Harris was an "eligible employee" within the meaning of the NYLL and Cigna was a "covered employer."

85.     By the actions described above, Cigna violated the FMLA, New York Paid Sick Leave Law, NYLL § 196-b, and New York City's Earned Safe and Sick Leave Law, by retaliating against and ultimately terminating Harris for taking legally protected mental health leave.

86.     As a direct and proximate result of Cigna's unlawful conduct in violation of NYLL § 215, Harris suffered and continues suffering harm for which he is entitled to an award of damages, to the greatest extent permitted under law, along with attorneys' fees and expenses.

87.     Cigna's unlawful retaliation constitutes bad faith, malicious, willful, and wanton violations of the NYLL § 215 for which Harris is entitled to an award of liquidated damages.

## EIGHTH, NINTH, AND TENTH CAUSES OF ACTION

**Discrimination, Sexual Harassment, and Retaliation in Violation of the New York State Human Rights Law ("NYSHRL")**

88.     Harris repeats and realleges each allegation in the preceding paragraphs as if fully set forth above.

89.     At all relevant times, Harris was an "eligible employee" within the meaning of the NYSHRL, and Cigna was a "covered employer."

90.     By the actions described above, Cigna discriminated against, harassed, and retaliated against Harris when Cigna made frequent and repeated hostile comments regarding his sexual orientation, body composition, and disability status, and when Cigna treated him less favorably than his peers outside those protected categories.

91.     As a direct and proximate result of Cigna's unlawful actions in violation of the NYSHRL, Harris suffered and continues suffering harm for which he is entitled to an award of damages, to the greatest extent permitted under law, along with attorneys' fees and expenses.

92.     Cigna's unlawful discrimination, harassment, and retaliation constitute bad faith, malicious, willful, and wanton violations of the NYSHRL for which Harris is entitled to an award of punitive damages.

## ELEVENTH, TWELVTH, AND THIRTEENTH CAUSES OF ACTION
### Discrimination, Sexual Harassment, and Retaliation in Violation of the NYCHRL

93.    Plaintiff repeats and realleges each allegation in the preceding paragraphs as if fully set forth above.

94.    At all relevant times, Harris was an "eligible employee" within the meaning of the NYCHRL, and Cigna was a "covered employer."

95.    By the actions described above, Cigna discriminated against, harassed, and retaliated against Harris when Cigna made frequent and repeated hostile comments regarding his sexual orientation, body composition, and disability status, and when Cigna treated him less favorably than his peers outside those protected categories, who were offered more training, support, and professional development opportunities than Harris and who were not mocked or subjected to racist stereotyping.

96.    As a direct and proximate result of Cigna's unlawful actions in violation of the NYCHRL, Harris suffered and continues suffering harm for which he is entitled to an award of damages, to the greatest extent permitted under law, along with attorneys' fees and expenses.

97.    Cigna's unlawful discrimination, harassment, and retaliation constitute bad faith, malicious, willful, and wanton violations of the NYCHRL for which Harris is entitled to an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Cigna in an amount to be determined at trial for the following relief:

A.  a declaratory judgment that the actions, conduct, and practices of Cigna violated federal, state, and city laws;

B.  an award of economic damages;

C.  an award of compensatory damages;

D.  an award of monetary damages for mental anguish and emotional distress;

E.  an award of punitive damages;

F.  an award of such interest as is allowed by law, and damages for any adverse tax consequences stemming from an award;

G.  an award of reasonable attorneys' fees, costs, and expenses of this action;

H.  permanent equitable and injunctive relief; and

I.  any other relief that the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a jury trial on all issues so triable.


August 1, 2025
New York, NY

**S**EPPINNI **L**AW, PLLC

*/s/ Shane Seppinni*
Shane Seppinni
Megan Jones
40 Broad St., 7th Fl.
New York, NY 1004
(212) 859-5085
shane@seppinnilaw.com
megan@seppinnilaw.com

20